# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JAMES KYLE BELL,**<br><br>**Defendant.** | No. _____<br><br>**VIOLATION:**<br>18 U.S.C. § 1343 (Wire Fraud)<br><br>**FORFEITURE:**<br>18 U.S.C. § 981(a)(1)(C),<br>28 U.S.C. § 2461(c), and<br>21 U.S.C. § 853(p) |

## INFORMATION

The United States Attorney charges that, at times relevant to the charged offense,

### COUNT ONE
### (Wire Fraud)

1. The Federal Elections Commission ("FEC") was the independent federal regulatory agency charged with administering and enforcing the federal campaign finance law. The FEC's mission was to protect the integrity of the federal campaign finance process by providing transparency and fairly enforcing and administering federal campaign finance laws. The FEC had jurisdiction over the financing of campaigns for the U.S. House of Representatives, the U.S. Senate, the Presidency and the Vice Presidency. The FEC was located at 1050 First Street, NE, in Washington, D.C.

2. A political action committee ("PAC") was an organization that pooled financial contributions in support of candidates for federal office. The FEC required that all PACs obtain a tax-payer identification number, designate a bank account for PAC funds, and register with the

FEC by filing FEC Form 1.  The FEC also required PACs to comply with applicable reporting requirements for contributions, expenditures, and disbursements.

3. The FEC used the term "independent expenditure" to refer to a PACs expenditure for a communication that met two requirements: (1) the communication expressly advocated for the election or defeat of a clearly identified candidate for federal office, and (2) the communication was not made in cooperation, consultation with, or at the request or suggestion of, any candidate, or his or her authorized committees or agents, or a political party committee or its agents.

4. The term "Super PAC" referred to a PAC that made only independent expenditures and was permitted to solicit and to accept unlimited contributions from individuals, corporations, labor organizations, and other PACs.

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who suffered the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

6. In order to obtain a PPP loan, a qualifying business had to submit a PPP loan application.  The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications in order toIn the PPP loan application including the business's average monthly payroll expenses and its number of employees.  These figures were used to calculate the amount of money the small business is eligible to receive under the PPP.

Businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

7. PPP loan applications were processed by a participating financial institution which served as the lender. If a PPP loan application was approved, the participating financial institution funded the PPP loan using its own monies, which were 100% guaranteed by the U.S. Small Business Administration ("SBA"), a cabinet-level federal agency located at 409 Third Street, SW, Washington, D.C. Data from the PPP loan applications, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. The recipient of a PPP loan could only use those funds for certain permissible business expenses—payroll costs, interest on mortgages, rent, and utilities. The CARES Act allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and used a certain percentage of the PPP loan proceeds on payroll expenses.

9. Businesses primarily engaged in political or lobbying activities were ineligible for SBA business loans including the loans guaranteed by the SBA through the PPP. Consequently, PACs and lobbyists were precluded from participating in the PPP.

**The Scheme and Artifice to Defraud**

10. The defendant, JAMES KYLE BELL, resided in the State of Nevada.

11. On or about January 7, 2020, BELL organized a Super PAC called the Keep America Great Committee ("KAGC") and registered the PAC with the FEC. KAGC purported

to support the re-election of President Donald Trump. BELL used the name of his wife without authorization on those registration documents.

12. BELL registered the domain name "keepamericagreatcommittee.com" and used that website to solicit donations. BELL copied the content for that website from other legitimate websites for campaigns and committees supporting President Trump's reelection. The KAGC website also copied source code and copyrighted materials without permission from another PAC.

13. BELL utilized an e-mail marketing company to assist with sending solicitations on behalf of KAGC. On one e-mail list, KAGC sent e-mail solicitations to over 42,000 unique recipients. KAGC's e-mail marketing contained material misrepresentations including promising "5X" matching of any donation to KAGC. The marketing materials also had the appearance of solicitations from the Trump Campaign containing the official campaign logo, misleading potential donors to donate to KAGC's website instead of directly to the Trump Campaign.

14. BELL also created a Nevada company called Keep America Great Committee LLC ("KAGC-LLC"). BELL then opened bank accounts in the name of KAGC-LLC which received money donated online to KAGC.

15. Between in or about January 2020 and in or about October 2020, KAGC received $246,751.45 in donations made online through its website and its marketing emails. KAGC received donations from over 1,000 donors.

16. BELL also applied for PPP loans on behalf of five different Nevada companies that were organized in the names of BELL and his wife. All of these loan applications included false statements and misrepresentations about the companies' operations. BELL fabricated and

submitted fictitious tax forms for all of these companies in support of the PPP loan applications that had never been filed with the Internal Revenue Service.  For example, BELL claimed that three of the companies each had an annual payroll over $2 million with more than 200 employees, when in fact those companies combined had at most six employees with far less in payroll expenses.

17.     BELL received funding from lenders in response to four of the fraudulent loan applications on the following dates, for the following companies, in the following amounts:

| Date Approved | Recipient Company | PPP Loan Amount |
|---|---|---|
| 4/30/2020 | Bella Threads LLC | $49,879 |
| 5/4/2020 | Red Five LLC | $112,187 |
| 5/10/2020 | Echo Three LLC | $485,016 |
| 5/15/2020 | Myson Rules LLC | $492,754 |

On May 5, 2020, BELL also submitted a fraudulent PPP loan application on behalf of a company called "5K Media LLC" which sought funding in the amount of $521,625.  However, that loan was not funded and the lender made no disbursement for that application.

18.     After BELL received the funding for these PPP loans, BELL diverted loan funds for his personal use and benefit.  BELL also transferred $380,891 of the PPP loan funds for Echo Three LLC to the bank account of KAGC-LLC where BELL co-mingled the PPP loan proceeds with donations to KAGC.

19.     On or about June 28, 2020, after a national media report called KAGC a "fake Trump group," BELL submitted a revised Form 1 for KAGC to the FEC in Washington, D.C.  In the revised document, BELL provided a false address for KAGC and false names for the PAC's organizers.

20. On or about June 19, 2020, BELL organized another super PAC called Best Days Lie Ahead Committee ("BDLAC") which purportedly supported the election of then-candidate Joseph Biden. Between June and September 2020, BELL purchased no less than 33 advertisements on Google for BDLAC at a cost of $22,800. BELL raised approximately $100,000 on behalf of BDLAC from online sources.

21. On or about July 13, 2020, BELL filed a quarterly report of KAGC's activities with the FEC. BELL reported that KAGC had received only $28,650 in receipts, with $23,499 in disbursements for the period April 1, 2020, through July 1, 2020. These statements were plainly false. Bank accounts in the name of KAGC-LLC had received more than $500,000 in incoming deposits during the prior quarter, including at least $380,000 in funds diverted from a fraudulently obtained PPP loan. Moreover, bank accounts in the name of KAGC-LLC had dispersed more than $90,000 in withdrawals and wire transfers during the same period.

22. During the 2020 election cycle, KAGC and BDLAC which were controlled by BELL received approximately $340,000 in donations—not including the funds that BELL diverted from a fraudulent PPP loan to KAGC-LLCs accounts. During that same period, BELL's PACs made no contributions to candidates, political parties, or other committees. And neither KAGC nor BELL ever provided "5X" matching of contributions as promised by KAGC.

23. On or about the following dates within the District of Columbia and elsewhere JAMES KYLE BELL, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted and aided and abetted the transmission by means of wire, radio, and television communication in interstate and foreign

commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice:

| DATE | TRANSMISSION IN INTERSTATE AND FOREIGN COMMERCE |
|---|---|
| January 7, 2020 | FEC Form 1 for KAGC sent by or at the direction of BELL to the FEC in Washington, D.C. |
| April 30, 2020 | PPP loan application data for Bella Threads LLC submitted to the SBA in Washington, D.C. |
| May 4, 2020 | PPP loan application data for Red Five LLC submitted to the SBA in Washington, D.C. |
| May 5, 2020 | PPP loan application data for 5K Media LLC submitted to the SBA in Washington, D.C. |
| May 10, 2020 | PPP loan application data for Echo Three LLC submitted to the SBA in Washington, D.C. |
| May 15, 2020 | PPP loan application data for Myson Rules LLC submitted to the SBA in Washington, D.C. |
| June 19, 2020 | FEC Form 1 for BDLAC sent by or at the direction of BELL to the FEC in Washington, D.C. |
| June 28, 2020 | Revised FEC Form 1 for KAGC sent by or at the direction of BELL to the FEC in Washington, D.C. |

**(Wire Fraud in violation of 18 U.S.C. § 1343; Aiding and Abetting, Causing an Act to be Done in violation of 18 U.S.C. § 2)**

**FOREFEITURE ALLEGATION**

24. Paragraphs 1 through 23 of this Information are re-alleged for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

25. Upon conviction of Wire Fraud in violation of Title 18, United States Code, Sections 1343 set forth in Counts One of this Indictment the defendant, JAMES KYLE BELL, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s). The property to be forfeited includes, but is not limited to, the following:

   a. $4,900 deposited by BELL into an account at Bank of America on or about December 22, 2020, and returned to BELL by Bank of America in a check which is currently held in trust by counsel for the defendant;

   b. $2,494.32 in funds seized from an account in the name of "Keep America Great Committee LLC" with Bank of America (account ending 8457)

   c. $2,934.43 in funds seized from an account in the name of "James Kyle Bell Amy Arlit" with Bank of America (account ending 5884)

   d. $187,480.58 in funds seized from an account in the name of "James Kyle Bell" with Bank of America (account ending 2519)

   e. $257,516.63 in funds seized from an account in the name of "Keep America Great Committee LLC" (account ending 8444)

   f. $68,702.10 in funds seized from an account in the name of "Red Five LLC" (account ending 1400).

   g. Money Judgment in the amount of $862,560.19

26. If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;
  b. has been transferred or sold to, or deposited with, a third party;
  c. has been placed beyond the jurisdiction of the court;
  d. has been substantially diminished in value; or
  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

**(Forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p))**

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney

By: _____
JOHN W. BORCHERT (Bar No. 472824)
Assistant United States Attorney
Fraud Section

ELIZABETH ALOI
Assistant United States Attorney
Public Corruption & Civil Rights Section

United States Attorney's Office
For the District of Columbia
555 Fourth Street, NW
Washington, D.C. 20530
(202) 252-7566

April 7, 2021