UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-CR-284 (JDB) |
| | : | |
| JAMES BELL | : | Sentencing Dec. 3, 2021 |
| | : | |
| Defendant. | : | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

### I. INTRODUCTION

James Kyle Bell ('Kyle Bell') has always lived an exemplary life. He is a loving and devoted father, husband, son, coach, and cherished friend. The conduct in this case is not indicative of Mr. Bells character and does not accurately represent the man that Kyle Bell truly is. Mr. Bell deeply regrets his conduct misappropriating funds, and in so doing, he has tarnished the honor of his family name, ruined his unblemished record, lost future career opportunities, and become a lifetime felon. The impact of Mr. Bell's actions has shaken him to the core, and he understands the gravity of the situation with the prospect of prison looming.

Mr. Bell respectfully submits this Sentencing Memorandum to assist the Court in determining an appropriate sentence in this case. For the reasons set forth below, Mr. Bell should be sentenced to sixteen months of home incarceration to be followed by a three-year term of Supervised Release.

This recommended sentence is appropriate for several reasons. First, the conduct that is at the center of this case was episodic, occurred in the midst of the pandemic, and contrasts sharply with Mr. Bell's otherwise unblemished professional and familial reputation. Beginning in early 2020, Mr. Bell's conduct was irresponsible and misguided. He misappropriated funds,

disregarded the truth, business ethics, and his own professional integrity. Nevertheless, as family members, business associates, and friends attest in their letters of support, such conduct was shockingly at odds with the talented, intelligent, and selfless man they knew before the Spring of 2020 and with the man they are assured Mr. Bell is today.

Second, the recommended sentence is also reasonable when compared to *United States v. Jaafar*, 1:20-cr-185-CMH (EDVA, 2020) and *United States v. Zhang*, 2:20-cr-00169-RAJ (W.D. Wash.), which is factually similar in many aspects. More generally, the cases cited by the government in other PPP loan or PAC cases with dissimilar facts have little value in structuring the sentence for Mr. Bell.

Third, the recommended sentence addresses both the need for specific deterrence for Mr. Bell and the general deterrence of others. Regarding specific deterrence, Mr. Bell has already taken the requisite steps to ensure that he will never re-offend. These steps include (1) stopping his wrongdoing voluntarily by returning the proceeds of the loan and several donations before he was contacted by law enforcement; (2) expressing his heartfelt remorse and contriteness to the Court, his family, friends, and business associates; and (3) paying restitution, and (4) being open to counseling with a mental health professional experienced in working with those who have been charged with crimes. As for general deterrence, sixteen months of home incarceration especially when coupled with Mr. Bell's downfall from businessman to felon, will deter all from committing a similar offense.

Finally, the sentence of sixteen months of home incarceration and a three-year term of supervised release with special conditions for mental health counseling, financial monitoring, and community service, and the possibility that he will be held responsible for all or a portion of the anticipated restitution order is sufficient but not greater than required to punish Mr. Bell for

his wrongdoing

## II. CASE OVERVIEW AND PROCEDURAL HISTORY

Mr. Bell pled guilty to a one count information charging him with wire fraud in violation of 18 USC § 1343. The maximum punishment for his offense is twenty years of imprisonment, a $250,000 fine, a 100.00 special assessment, mandatory restitution, and not more than five years of supervised release. The essence of the wire fraud is not in dispute. Beginning in March and continuing through June of 2020, Mr. Bell applied for a series of Payroll Protection Program ("PPP") loans under the CARES Act. This legislation was enacted in the early months of the COVID-19 pandemic to provide relief to businesses experiencing financial hardship. Mr. Bell applied for these loans in the names of various businesses that he or his wife either currently owned or owned in the past. At the time he submitted the loan applications, however, the businesses did not satisfy the prerequisites for PPP loans as on-going businesses with significant revenue and payroll expenses. The loan applications were supported by false payroll and employment records. One of the requests for a loan was rescinded. What generally sets Mr. Bell's case apart from most fraud cases, and especially from other PPP loan fraud cases, is that Mr. engaged in no frivolous spending on luxury items and no funding of a drug or other dangerous addiction.

Mr. Bell also organized a Super PAC where he accepted donations and used the funds to purchase legitimate online ads for his existing business. While he did change the address information after an article about the donations was written, his intent was to shield his family from any future physical harm. When individuals contacted him related to their donations Mr. Bell refunded their money.

The government argues that Mr. Bell was not in need of government's assistance. *See*

Govt. Mem. at 1. However, the government has a skewed view of Mr. Bell's finances. A review of the records indicates that he spent the majority of the PPP funds on living expenses for his family. In 2021 he was notified by the IRS that he owed 94,000 in taxes. *See* (Attachment A). In 2019 he was served with an eviction notice, *see* (Attachment B) and the Sheriff came to his home and changed the locks. The entire family became aware that within days they could be evicted. Mr. Bell was able to cure the eviction, however the shame he faced was unmatched. The family eventually moved out of that residence and are no longer living at that address.

When the pandemic struck, Mr. Bell learned from his entrepreneurial friends who had ongoing businesses that they had obtained PPP loans. He leaped into his short-lived fraud scheme with minimal to no thought about the consequences. His perceived lack of self-worth was the motivation for his episodic conduct. The pressure which Mr. Bell placed on himself to fulfill his role as a successful husband and father led to his downfall. He acted because he felt like a failure, and it was this fear of failure that was at the core of his wrongdoing. In 2020 just one month before the pandemic Mr. Bell had his car repossessed. He was struggling and unable to financially take care of his six-person family. Much of the PPP funds were intact when seized by the government, and the government concedes that Mr. Bell made over 100,000.00 in refunds from the BDLAC Super PAC.

Mr. Bell's conduct stands in stark contrast to his otherwise law-abiding personal history and his stellar reputation in the community. To his credit, Mr. Bell accepted prompt responsibility for his actions, entered a plea of guilty to the charged offenses and was extremely cooperative in the government's investigation of him from day one, making clear from the outset that he did not wish to contest the charges. He has lived an admirable and law-abiding life, and most importantly he has no prior criminal history, and four minor children and a wife who are

solely dependent on him. It is for those reasons, that Mr. Bell respectfully asks this Court to impose a sentence of sixteen months of home incarceration.

### III. THE SENTENCING GUIDELINES OVERSTATE THE SERIOUSNESS OF THESE OFFENSES

While once mandatory, the Sentencing Guidelines are now strictly advisory and are entitled to no presumptive weight over other legitimate sentencing factors. *United States v. Booker*, 543 U.S. 220, 224 (2005); *Nelson v. United States*, 555 U.S. 350, 352 (2009). In *Pepper v. United States*, 562 U.S. 476, 487-488 (2011), the Supreme Court stated, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." quoting *Koon v. United States*, 518 U.S. 81, 113 (1996). The Court in *Pepper* added that "Underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime,'" quoting *Williams v. United States*, 337 U.S. 241, 247 (1949). The Guideline range is just one factor to consider in sentencing. The Guidelines are not even considered presumptively reasonable. See, e.g., *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable." (Emphasis included.)

Pursuant to the terms of the Plea Agreement, the parties agreed 1) the base offense is 7; 2) the loss amount is more $1,500,000 resulting in a 16-level upward adjustment; 3) the sophisticated means adjustment is applicable, adding two additional levels; 4) acting on behalf of a PAC adds two levels; 5) mass marketing adds two levels; and, 5) that Mr. Bell has accepted responsibility and qualifies for a three (3) level decrease pursuant to USSG § 3E1.1. With these adjustments, the total offense level is 28. With a criminal history category of I (zero criminal

history points), the applicable guideline range is 78-97 months. Although we acknowledge that this guideline calculation is correct under applicable law, we believe that this range greatly overstates the serious of the offense and provides ample reason for this Court to impose a substantially lower sentence. Because the total offense level in fraud cases is so heavily influenced – we believe unjustly in this case – by the loss amount, it tends to unfairly push the sentencing range much higher than warranted by the offense conduct. Thus, in this case, the adjustment attributable to loss comprises over 50% of the total offense level and the intended amount and the amount derived from bank are duplicative in nature. This fact alone provides the Court with an obvious basis for a variance from the guideline range and lends support to our recommendation of a sixteen month term of home incarceration.

## IV. THE CRIMINAL CONDUCT IS ENTIRELY OUT OF CHARACTER FOR MR. BELL

**A. Mr. Bell's Upbringing and Educational Background.**

Kyle Bell is 45 years old. The shame he feels related to his conduct is suffocating and overwhelming. Kyle Bell was born in Alamdea, California. His father James Bell served in the U.S. Navy and worked hard to take care of his family. His mother, Mrs. Gaileen Bell Gibbens was not employed outside of the home but worked hard to raise Kyle, his sister Kallie, and his brother Kevin. His parents provided him with a loving home, with high expectations for Mr. Bell. Growing up Kyle understood that a father's role was to financially take care of his wife, children, and household. Mr. Bell's sole goal in life has always been to take care of his family.

Mr. Bell was a talented young athlete who played football and basketball throughout high school. After graduation he attended the University of Nevada where he thrived and excelled in the classroom. Mr. Bell earned an undergraduate degree in Business Administration in 1999, and earned an MBA from the University of Nevada in 2001.

**B. Mr. Bell's Marriage and Family Life.**

In 2005 Mr. Bell married Amy Arlit, and initially they both worked together to handle the household finances. However, by 2012, after the birth of their third child, Ms. Arlit stopped working to stay home and raise their children Kassidy, Kaeden and Ryan. As such, the full weight household expenses fell onto Mr. Bell.  Mr. Bell and Ms. Arlit now have four children of whom they are immensely proud. Kassidy Bell (age 15); Kaeden Bell (age 12); Ryan Bell (age 9); and Kash Bell (age 7). Kaeden and Kassidy play travel softball and Mr. Bell volunteers as their coach. In the last year, Mr. Bell has volunteered more than 450 hours coaching his daughter's softball team. He is an ever-present father, who remains severely depressed and demoralized over the fact that he will miss parts of his children's lives.

When Mr. Bell fell on hard financial times, he did not tell Ms. Arlit. He was afraid that he had failed as a husband and believed that he was a disappointment to his family.  It was Mr. Bell's feeling of despondency or a lack of self-worth that provides insight into what led him to depart from his generally successful career so abruptly and inexplicably in the midst of the pandemic.

**C. Mr. Bell's Professional Life.**

At the time of the FBI's search of his home, Mr. Bell was self-employed in an e-commerce business. He had been self-employed for years with little success. Unfortunately, in 2019, his wife's e commerce business began to lose profits and maintaining the business was untenable. Mr. Bell's previous employment history makes his wrongdoing even more difficult to comprehend. At the same time, it lends support to the position that Mr. Bell's failure as a husband and father, was the primary cause of his downfall. In his own eyes, he didn't measure up to the ideals instilled in him by his father to 'always be the provider for your family.' In fact, the

shame and embarrassment of being involved in this misconduct, has shattered Mr. Bell so much, that he is too ashamed to let his father know he is facing time in prison.

### D. Mr. Bell's Character – Devotion to Family; Generosity to Friends and Business Associates; and Lack of Self-Worth.

Outside his professional life, Mr. Bell also has much to offer. He is a loving spouse and parent who is the sole provider in the home. Those who know Kyle Bell the best, including his family, friends, and business associates all describe Mr. Bell's life as one anchored in strong moral values, an unwavering commitment to his wife and four children, and an enthusiasm for helping others in his community and in business.

The government has pointed to Mr. Bell's parallel conduct related to EIDL loans as further evidence of his improper intent. The Court should not consider this information as the loans were never funded by the SBA and there was no economic loss. This conduct which occurred at almost the same time as he was applying for the PPP loans is simply more evidence of his unhealthy mental state in mid-2020.

The government's assertion, that Mr. Bell had no need for the government's assistance during the pandemic is incorrect. Mr. Bell and his family did need help. His businesses were flailing, he was the sole provider, and he was desperate. Mr. Bell cannot and does not attempt to justify his conduct and he wants the Court to know that he immensely regrets his actions in this case.  The events at issue occurred after he fell on hard times just before the pandemic. As a result, he will forever be branded a felon and has lost valuable civil rights. Despite his accomplishments and life full of promise, Mr. Bell's reputation has been irreparably damaged.

When this matter became public in March of 2018, Mr. Bell lost even more income and revenue. Since that time, he has lived with the knowledge that he would have to plead guilty to his crime and the prospect of incarceration, which has not been easy. Despite the impending

criminal consequences, he has persevered and has continued to try to provide for his family. Put simply, Mr. Bell presents a low risk of recidivism and both he and his community will be better served by a non-custodial sentence. Therefore, we respectfully submit that a sentence of home-confinement is sufficient, but not greater than necessary to carry out the mandates of 18 U.S. C. § 3553(a).

## V. A SENTENCE OF SIXTEEN MONTHS HOME INCARCERATION AVOIDS SENTENCING DISPARITY

As the Court may already be aware, Mr. Bell's case is one of many cases involving PPP loan fraud. *United States v. Zhang*, 2:20-cr-00169-RAJ (WDWA 2020), has been sentenced and, we submit, offers important guidance for the sentencing in this case. Of the myriad of PPP loan fraud cases prosecuted nationally, the facts of one such case – *United States v. Jaafar*, 1:20-cr-185-CMH (EDVA, 2020) – lends further support to our recommendation of a term of home incarceration. In the EDVA case, Tarik Jaafar and his wife, Monika Magdalena Jaworska, submitted eighteen fraudulent PPP loan applications for four businesses, all of which were shell companies, to twelve financial institutions. (Mr. Bell submitted less than half of the number of fraudulent loan applications financial institutions.) In total, Mr. Jaafar sought $6.6 Million (Mr. Bell sought approximately $2 Million, rescinded at least one loan, and gave more than 100,000.00 in refunds) and received $1.4 Million. Mr. Jaafar also applied directly to the Small Business Administration for two EIDL loans and received one $10,000 advance.

Nationally, the cases that have already reached the sentencing stage provide a mosaic of varying facts and circumstances and of sentences imposed. Most of the cases cited by the government are factually dissimilar to the present case and offer little guidance.

## V. THE 18 U.S.C. § 3553(a) SENTENCING FACTORS SUPPORT A NON- CUSTODIAL SENTENCE

Section 3553(a) requires district courts to consider the following factors in imposing sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). 18 U.S.C. § 3553(a)(1)-(7). The end result of the analysis must be a sentence that is "sufficient, but not greater than necessary" to comply with four purposes of federal sentencing, i.e., the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). For the reasons explained above, the requested sentence is "sufficient but not greater than necessary" to serve the purposes of federal sentencing under the circumstances of this case.

**A. The Nature and Circumstances of the Offense.**

Mr. Bell agrees to and accepts full responsibility for the offense conduct as provided in the Statement of Facts and the PSR. Mr. Bell does want to provide additional context so that the Court can better understand why and how he engaged in the charged behavior, especially which is in stark contrast to the rest of his life. At the time of the charged events, Mr. Bell had recently fallen on hard times with his employment. Mr. Bell understood at the time he engaged in these acts they were wrong. He wants the Court, the government, and the public to know how deeply sorry he is. He understands that he is to blame for the significant consequences that his actions have caused. He is extremely remorseful. In an effort to atone for his conduct, Mr. Bell gave a

full statement when Federal Bureau of Investigation executed the search warrant at his home. He met with them for hours, and provided valuable insight into his conduct. His prompt guilty plea helped the government streamline its investigation of this matter. We respectfully submit that the nature and circumstances of the offense, including his early acceptance of responsibility, warrant a variance.

    **B. Mr. Bell's Personal History and Characteristics Demonstrate that He is Deserving of a Variance**

We agree with the PSR writer that there are factors present in this case that warrant a variance from the guidelines range, including Mr. Bell's family structure, his four children and his role as the sole provider. After he obtained his Master's degree, Mr. Bell made his home in Nevada. Mr. Bell has succeeded in every respect of his life. This incident represents Mr. Bell's sole encounter with the criminal justice system. Mr. Bell has always strived to make sure that he was financially responsible for his family and was involved in his community. As previously stated he served as one of the coaches for his daughter's softball team volunteering hundreds of hours of his time.

    **C. Attestation to Mr. Bell's Character by Family Members and Friends**

We would ask the Court to give significant weight to the letters of family members and friends in fashioning a sentence for Mr. Bell. The letters describe Kyle Bell as benevolent, generous, and caring man. *See* (Attachment C). They reflect that Mr. Bell has a natural inclination toward serving his family, friends, and his community. The letters submitted illustrate that Mr. Bell is a truly remarkable person who has positively impacted the lives of many people which we submit warrants a variance.

Mr. Bell's family and friends also attest that Mr. Bell has expressed sincere remorse and regret for his actions. They have each asked that this Court be lenient when imposing its

sentence. He has so much to offer this world and he continues to express his deepest regrets, remorse, and redemption. Mr. Bell is confident that he will never make such a mistake again and he will continue to be a law-abiding citizen and upstanding member of society.

These letters have a resounding theme—that Mr. Bell is a man who cares deeply for his friends, family, and his community, particularly with respect to his commitment to his children. While these testimonials represent a mere glimpse of Mr. Bell's strong moral character and dedication to serving others, they provide valuable insight into his nature. Each describes Mr. Bell as a man of compassion. Mr. Bell requests the court's consideration of these factors in its sentencing of Mr. Bell and we respectfully submit that a home confinement sentence is warranted.

**D. The Need to Avoid Unwarranted Disparity Among Similar Offenders**

We respectfully submit that a sentence of home incarceration is also consistent with sentences of defendants with similar records who have been found guilty of similar conduct. Counsel has submitted examples of cases in the past year or so below to demonstrate that a sentence of hone confinement is in alignment, locally and on a national level, with other federal sentences that have been imposed in cases with significantly higher loss amounts or prolonged criminal conduct. In *United States v. Archie Overby*, Case No. 19-CR-84 (E.D.Wisc. 2019). Overby, a 71-year- old Chief Executive Officer of First National Bank, was indicted on 12 charges of bank fraud and a single count of misapplication of funds by a bank officer for misappropriating $1.6 million in bank funds. He charged extravagant personal expenses to the bank, including three trips to Africa for a safari with his family and friends. The expenses had no legitimate banking purpose. He misled auditors about his expenses. He pled guilty to Misapplication of funds by a bank officer and his adjusted offense level was a 24, 51-63 months

of incarceration. He was ordered to simply repay $146,000, after he had paid the rest of the funds as part of a civil matter.

### E. Purposes of Federal Sentencing

Congress has identified four purposes of federal sentencing that must guide district courts in imposing a sentence. The sentence must be "sufficient, but not greater than necessary" to serve those purposes. We respectfully submit that the purposes of federal sentencing would be fully served by imposition of the sentence recommended in this memorandum.

The first purpose of federal sentencing is "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." A period of home confinement is sufficient, when combined with Mr. Bell's felony conviction and the forfeiture of the payments he received, especially in light of the fact that Mr. Bell will forever be branded a felon.

The second purpose of federal sentencing is "to afford adequate deterrence to criminal conduct." We respectfully submit that a non-custodial sentence would not frustrate the goal of deterrence. A strong message of deterrence has already been sent as a result of Mr. Bell's prosecution as his guilty plea received coverage from different media outlets. In fact, this matter received media attention prior the entry of his plea. Therefore, regardless of the sentence, media attention and the shame that followed has already sent a strong message of deterrence.

The third purpose of federal sentencing is "to protect the public from further crimes of the defendant." We respectfully submit that neither the public nor the government require further protection from Mr. Bell. His personal history and characteristics demonstrate that his actions in this case were a temporary and singular diversion from an otherwise exemplary and law-abiding life. His decision to admit his wrongdoing and accept an early guilty plea support a finding that

he is not a risk to recidivate.

The fourth purpose of federal sentencing is "to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner." We respectfully submit that he is not in need of any such care. Mr. Bell is a 45-year-old man, who suffers from Chron's disease, and while unvaccinated, he is taking all of the proper precautions so he does not contract COVID-19. Mr. Bell's chance of contracting the coronavirus will increase if he is in the custody of the Bureau of Prison. Indeed, the BOP's problematic handling of the coronavirus has been widely documented. As several courts have acknowledged, citing experts including the Center for Disease Control and Prevention ("CDC"), correctional and detention facilities present unique challenges for control of inmates. BOP has also encouraged judges and prosecutors to consider home confinement and other alternatives to incarceration. The Court should weigh these factors and the unnecessary risk to Mr. Bell's health, when considering imposition of a custodial sentence.

## CONCLUSION

For the foregoing reasons and any others that may appear to the Court or that may develop at the sentencing hearing, Mr. Bell respectfully requests that this Court impose a sentence of sixteen months of home incarceration to be followed by three years of Supervised Release.

Respectfully submitted,
/s/ *Brandi Harden*

_____
Brandi Harden
Bar No. 470706
Counsel for James Kyle Bell
Harden|Pinckney, PLLC
400 7th Street Suite 604
Washington, DC 20004
bharden@hardenpinckney.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on November 24, 2021, I caused a copy of the foregoing motion to be served on counsel of record via ECF.

      /s/ *Brandi Harden*

      _____

      Brandi Harden, Esq.